*744 OPINION.
Van Fossan :
The determination of the March 1, 1913, value of a lease upon coal lands and the proper depreciation, depletion, or exhaustion allowance thereon in computing petitioner’s taxable income, is the only question before us in this case. The petitioner claims a value of at least $100,000, inclusive of improvements. The respondent contends that the lease had no value at March 1, 1913, and that, therefore, depreciation, depletion or exhaustion is not allowable.
The petitioner relies upon the testimony of four witnesses, including the principal stockholder of the petitioner, all of whom were familiar with the property. One of the witnesses, an expert valuation engineer, made several appraisal reports upon the property and testified in detail relative to the values fixed by him. The substance of the testimony and these appraisals related principally to the coal content of the property, its minability and the quality of the coal. Two of the witnesses gave their opinion of the March 1, 1913, value of the lease, $150,000 being assigned as the value by one and $323,810 by the other. The greater of these valuations was based principally upon an estimated profit of 50 cents per ton of coal to be mined. The evidence establishes, however, that petitioner suffered a loss upon the coal produced in each year from 1911 to 1916, inclusive, and realized a profit for the first time in the year 1917. It is also noted that although petitioner under its lease was required to produce in 1913 and subsequent years not less than 70,000 tons per year, or in any event to pay the stipulated royalty upon that tonnage, it was not until the year 1915 that it reached a production equal to the specified minimum, and it was not until 1917 that it reached the normal prodiTction of 150,000 tons per year. The basis of the lesser valuation is not clear, but it apparently was also predicated on anticipated profits which were not justified by petitioner’s operating record. In the light of all the facts the values assigned to the lease by these witnesses can be given little weight. It is also noted that no evidence was introduced in explanation of the wide divergence between the two valuations testified to by these witnesses.
We must determine the March 1, 1913, value of this lease in the light of the facts and circumstances existing or known with reasonable certainty on that date. This record discloses that the petitioner in 1911 acquired a mining property which had the reputation of being a very dangerous and hazardous mine. It appears that the petitioner had extreme difficulty in obtaining labor for the working of the mine and that for a period of six years it sustained annual *745 net losses per ton on all coal produced, which amount was considerably less than its estimated normal annual production. In a later year, to wit 1919, it again sustained a loss, although the tonnage produced exceeded its estimated normal production. It further appears that during the early years there was no available market in which the petitioner could reasonably expect to dispose of its product even if its estimated normal production of 150,000 tons per year had been reached. The royalty which the petitioner was required to pay under its lease was the average rate obtaining in that district, and on March 1, 1913, its lease had approximately 19 years to run. We are unable to find upon this record that the coal in place gave petitioner’s lease any capital value on March 1,1913.
The petitioner, however, acquired a developed mining property containing improvements and development work having a value to the owner of the land of $67,400 on March 1, 1913. The royalty which the petitioner was required to pay was but the average rate obtaining in that district for undeveloped property. Petitioner, having acquired a developed property at the average royalty rate for undeveloped property, obtained a leasehold of some capital value. This value on March 1, 1913, is to be measured by the use of such development and improvement for the remaining life of its lease.
On March 1,1913, petitioner’s lease had a remaining life of 18 years and 10 months. The value to the owner of the land of the development and improvements on that date was $67,400. Under the peculiar circumstance of this case, considering the character of the business, the hazards of gas explosion, labor troubles, and market conditions, we are of the opinion that the value of petitioner’s lease on March 1, 1913, was $50,000, which is subject to exhaustion based upon a tonnage of 2,461,255 tons reasonably recoverable over the remaining life of the lease.

Judgment will be entered on 15 days’ notice, under Bule 50.

Considered by MaRqtjette, Milliken, and Phillips.